## CENTRAL LUMBER CO. et al. v. FALL.
### (No. 1108.)

(Court of Civil Appeals of Texas. Beaumont. June 27, 1924. Rehearing Denied July 7, 1924.)

1. **Appeal and error ⬳680(2)—Assignment court erred in overruling demurrer not considered, where record fails to show demurrer presented to trial court.**

Where record fails to show that demurrer was presented to trial court, assignment that court erred in overruling demurrer will not be considered.

2. **Appeal and error ⬳733, 742(6)—Assignment that judgment is contrary to evidence held too general and insufficient as proposition.**

Assignment of error that judgment is contrary to evidence and against preponderance thereof *held* too general as assignment of error and insufficient as proposition.

3. **Appeal and error ⬳733, 742(6)—Assignment that judgment was contrary to law held too general and insufficient as proposition.**

Assignment of error that judgment was contrary to law *held* too general and insufficient as proposition in not pointing out wherein judgment was contrary to law.

4. **Appeal and error ⬳733, 742(6)—Assignment that judgment compels performance of illegal contract not setting out illegality held insufficient.**

Assignment of error that court committed fundamental error in rendering judgment compelling defendant to carry out illegal contract *held* too general and insufficient as proposition as not pointing out wherein contract was illegal.

5. **Corporations ⬳440—Pledge of stock to secure payment of machinery of equal value held valid.**

Though, under Const. art. 12, § 6, and Vernon's Sayles' Ann. Civ. St. 1914, or Complete Tex. St. 1920, art. 1146, corporation may not pledge its unissued stock to secure antecedent debt, pledge to secure payment for machinery of equal value under agreement made at time of purchase was legal, though stock was not delivered till many months after machinery was delivered to corporation.

6. **Appeal and error ⬳173(6)—In absence of plea of ultra vires, or evidence thereof, contention transaction was ultra vires cannot be considered.**

In absence of plea of ultra vires and of evidence that corporation's charter prohibited transaction, contention that transaction was ultra vires cannot be considered on appeal.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Corporations ⟨key⟩432(2)—Presumed corporation's president had authority to issue stock pledged to secure payment of machinery.**

Where certificate of stock pledged by corporation for machinery was signed by its president and secretary under corporate seal, it will be presumed, in favor of stranger dealing with the corporation, that president had authority to issue stock, in absence of plea of ultra vires and of evidence of lack of authority.

**8. Corporations ⟨key⟩388(2)—Corporation estopped to claim pledge of stock for machinery received and retained by it was ultra vires.**

Where contract whereby corporation pledged its stock as security for payment of machinery was fully executed by delivery of machinery and its acceptance and retention by corporation, corporation was estopped to plead transaction was ultra vires.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by H. B. Fall against the Central Lumber Company and another. Decree for plaintiff, and defendants appeal. Affirmed.

Hill & Glover, of Houston, for appellants. Meek & Kahn and J Meek Hawkins, all of Houston, for appellee.

HIGHTOWER, C. J   This was a suit by the appellee, H. B. Fall, against the Central Lumber Company, a private corporation, and B F. Greenwood, the appellants, as defendants, in which the appellee sought to recover against the Central Lumber Company a $1,000, with accrued interest, as the agreed purchase price of a planer and other machinery alleged to have been sold and delivered by appellee to the Central Lumber Company, and to foreclose a pledgee's lien on ten shares of the capital stock of the Central Lumber Company, which appellee alleged it was agreed should be put up as collateral security to secure the payment for said planer and machinery when due. As to Greenwood, appellee alleged, in substance, that at the time of the purchase and sale of the machinery Greenwood agreed and promised to guarantee payment of the purchase price of the planer and machinery when due by promising and agreeing to take up these ten shares of stock to be put up as collateral security at their full face value, with interest thereon from January 21, 1921, at the rate of 8 per cent. per annum.  The appellee alleged, in substance, that the contract for the sale and purchase of the planer and machinery was entered into between the parties about the 1st of January, 1921, and that it was agreed and understood that the Central Lumber Company was to pay appellee for the planer and machinery $1,000 on the 1st of January, 1922; that the planer and machinery were delivered to the Central Lumber Company at the date of such sale;  that it was agreed and understood between the Cen-

tral Lumber Company and appellee that the Central Lumber Company would deliver to appellee, as collateral security for the payment of its obligation, ten shares of its capital stock of the par value of $100 each, but that, as a matter of fact, the stock was not actually delivered to appellee until about the 21st of September, 1921, on which date it was delivered to appellee in keeping with the agreement as originally made, and that such collateral was still held by appellee at the time the suit was filed; that the Central Lumber Company had failed to meet its obligation by paying the purchase price of the planer and machinery, or any part of it, when the same became due, and that Greenwood had failed to keep his promise and agreement, which was in writing, to take up said shares of stock and pay therefor, as he had agreed, at the maturity of the Central Lumber Company's debt, and appellee prayed judgment against both defendants in the sum of $1,000, with interest thereon at the rate of 8 per cent. from January 1, 1921, and for foreclosure of his lien on the stock, as before mentioned. The defendants, Central Lumber Company and Greenwood, answered by separate answers, but each interposed only a general demurrer and a general denial.

The case was tried before the court without a jury, and resulted in a judgment in favor of the appellee against both defendants, and for foreclosure of his lien on the stock, and from this judgment both the Central Lumber Company and Greenwood have appealed.

The evidence found in the record shows that Greenwood was the president of the corporation, Central Lumber Company, but, while he admitted that he conducted the transaction of the purchase and sale of the planer and machinery from appellee, he testified that in doing so he was not representing the Central Lumber Company in any respect, and did not purport in his negotiations with appellee to be acting for the Central Lumber Company, but that in making the purchase of the machinery and planer he acted for his, Greenwood's brother, who was in no way connected with the Central Lumber Company, and that the Central Lumber Company was in no way obligated to appellee for the purchase price of this planer and machinery. Mr. Greenwood also contended that the transaction for the sale and purchase of this planer and machinery was not as claimed by appellee, but that the true transaction was, in substance, that appellee agreed to accept as payment for the planer and machinery the ten shares of stock of the Central Lumber Company, not as security for any obligation, but as payment in full for the planer and machinery. These contentions made by Greenwood were denied in toto by appellee, and as to these disputed issues

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of fact the trial court found in favor of the appellee and filed formal findings of fact, as follows:

"I find that some time during the month of December, 1920, the plaintiff, H. B. Fall, sold and delivered to the defendant Central Lumber Company certain planing mill machinery for which the defendant Central Lumber Company promised and agreed to pay the plaintiff on January 1, 1922, the sum of $1,000 with interest thereon from January 1, 1921, at the rate of 8 per cent. per annum; I further find that at the time of said sale the defendant, Central Lumber Company agreed to deliver to said H. B. Fall ten shares of its capital stock of the face value of $1,000 as collateral security for the payment of said indebtedness. I find that at the time of the sale of the property hereinabove described that the defendant B. F. Greenwood obligated and bound himself to personally guarantee the payment of this indebtedness at its maturity date. I find that on September 21, 1921, the defendant Central Lumber Company, in keeping with its agreement, did deliver to the plaintiff herein ten shares of its capital stock for the face value of $1,000 under certificate No. 17. I further find that at the time of the delivery of said certificate No. 17 to the plaintiff, H. B. Fall, the defendant B. F. Greenwood also delivered to H. B. Fall his warranty or guaranty in writing guaranteeing the payment of the above indebtedness at its maturity date in keeping with his personal agreement. I find that said indebtedness is past due and unpaid, and the guarantee and warranty of the defendant B. F. Greenwood unsatisfied."

It was upon these findings of fact that the judgment before mentioned was entered, and, while some of the material findings of fact are challenged by appellants as being unsupported by the evidence, it is our conclusion that each material finding of fact is sufficiently supported, and the contention of appellants to the contrary must be overruled.

We are met at the threshold of this case with strenuous objections made by appellee to a consideration of any of the assignments of error found in appellant's brief, because of the failure on appellant's part to comply with the rules for briefing causes in this court. Upon examination of appellant's brief it is manifest that the rules for briefing causes in this court have been practically wholly ignored by appellant, and but for the fact that appellant contends that there was fundamental error in the judgment in this case, we would feel it our duty to affirm the judgment upon appellee's brief, without further discussion.

[1] By the first three assignments of error it is contended, both on the part of the Central Lumber Company and Greenwood, that the court was in error in overruling the general demurrer interposed by each of these appellants. We dispose of these three assignments briefly by saying that there is nothing in this entire record to show that the general demurrer of either of these appellants was ever presented to or called to the attention of the trial court, and nothing to show that such demurrer was ever overruled.

[2] The fourth assignment is:

"The court erred in rendering judgment against the defendants herein for the reason that said judgment is contrary to the evidence and against the preponderance thereof."

This assignment is submitted as a proposition within itself. It is entirely too general as an assignment of error, and is insufficient as a proposition as well. No statement is made in connection with it nor reference to any evidence relative to this assignment.

[3] The fifth assignment is:

"The court erred in rendering judgment against the defendants herein for the reason that said judgment is contrary to law."

This is submitted as a proposition. The assignment is entirely too general, and as a proposition it certainly does not point out wherein the judgment is contrary to law.

[4] The sixth assignment is:

"The court committed fundamental error in rendering judgment herein against the defendant Central Lumber Company for the effect of said judgment is to give validity and compel said Central Lumber Company to carry out a contract which it is prohibited by law from making."

This assignment is submitted as a proposition. It is manifest that the assignment is entirely too general to merit the consideration of this court, and as a proposition it does not point out wherein the contract sued on could not legally be made by the Central Lumber Company.

The seventh assignment, which is submitted as a proposition, is as follows:

"The court committed fundamental error in rendering judgment on the alleged contract between the Central Lumber Company and plaintiff, H. B. Fall, for the reason the contract as declared upon is contrary to law, void, and unenforceable."

Our remarks relative to the sixth assignment of error dispose of this.

The eighth assignment of error is, in substance, that the trial court erred in each and every conclusion of fact that he made. We have already disposed of this assignment by adopting the findings of fact as made by the trial court.

[5] The ninth assignment of error is, in substance, that the trial court was in error in each conclusion of law, and, while we do not consider that the propositions submitted under this assignment are such as to require this court to review the trial court's legal conclusions in this case, nevertheless, because of the contention made by appellants' counsel that the judgment in this case is fundamentally erroneous as to one feature of it, we will dispose of such contention at sufficient length to make it clear, as we think, that

there was no fundamental error in the judgment. This contention made by counsel for appellant is, in substance, that the Central Lumber Company, being a private corporation, could not issue and put up, as collateral security for the payment of its obligation to appellee, any of its capital stock, because it was prohibited from doing so by section 6, article 12, of our state Constitution, and by article 1146 of our statute.

The section of the Constitution referred to is as follows:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

Article 1146 of the statute (Texas Complete Statutes 1920) reads as follows:

"No corporation, domestic or foreign, doing business in this state, shall issue any stock whatever, except for money paid, labor done, which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received, reasonably worth * * * the sum at which it was taken by the company. Any corporation which violates the provisions of this article shall, on proof thereof in any court of competent jurisdiction, forfeit its charter, permit or license, as the case may be, and all rights and franchises which it holds under, from or by virtue of the laws of this state."

Counsel for appellant contend that these provisions of the Constitution and statute expressly prohibited and made illegal the act of the Central Lumber Company in putting up as collateral security the ten shares of stock hereinbefore mentioned to secure the payment of the purchase price of the planer and machinery which were sold and delivered to the Central Lumber Company by the appellee. It will be remembered that the trial court found, and the evidence supports the finding, that at the time the contract for the sale and purchase of this planer and machinery was entered into it was agreed that the Central Lumber Company should put up with appellee, as collateral security for the payment of its obligation, these ten shares of stock of the par value of $100 each. The evidence was amply sufficient to show that the value of this planer and machinery which was sold and delivered by appellee to the Central Lumber Company was fully equal to the value of these shares of stock. While it is true that the stock was not delivered to appellee at the time he delivered his planer and machinery to the Central Lumber Company, but such delivery was deferred until September following, nevertheless it was agreed at the time of the transaction that this stock was to be issued and put up as collateral, and it should be and will be treated as having been put up in appellee's hands as such collateral security at the time he delivered his property of equal value to the

Central Lumber Company. Such being the facts, we have no doubt that the transaction was perfectly legal, and that the pledge of this stock, under the circumstances, was not inhibited by either the Constitution or statute of this state.

It may be conceded, and we thing the weight of authority supports the proposition, that a corporation may not pledge as collateral security its unissued original stock to secure the payment of the corporation's antecedent debt, where such is prohibited by constitutional or statutory provision, or perhaps where prohibited by the charter itself of the corporation, though it must be admitted that there is authority supporting the proposition that a corporation may so secure its antecedent debt. An interesting discussion of this question may be found in the case of Re Progressive Wall Paper Corporation, Bankrupt, an opinion by one of the United States Circuit Courts of Appeal, which will be found reported in 229 Fed. 489, 143 C. C. A. 557, and in L. R. A. 1916E, at page 563. There is also an interesting note at the end of this decision in the volume last mentioned. While, however, a corporation, according to the weight of authority, may not validly pledge as collateral security its unissued stock or bonds to secure the payment of an antecedent debt of the corporation, in the face of such constitutional and statutory provisions as we have on the subject, still it does not follow that the pledge by the Central Lumber Company of its capital stock in this instance was prohibited by either the provision of the Constitution or the statutory provision, because it is very clear that the pledge of the stock in this instance was not to secure an antecedent debt of the corporation. The pledge was made in keeping with the agreement of the parties at the time of the sale and delivery by the appellee of his property to the corporation, and there is no question but what the value of appellee's property was fully equal to that of the corporation's stock. There can be no question that the Central Lumber Company would have had the authority to sell these shares of stock in payment for the appellee's property, and, if so, the conclusion cannot be escaped that it had the right to pledge this stock for the same property, provided the property was in value equal to that of the stock. The point has been already ruled in this state, and no useful purpose would be served in discussing the matter at greater length. Western Supply & Mfg. Co. v. U. S. & M. Trust Co., 41 Tex. Civ. App. 478, 92 S. W. 986. The opinion in the cited case was by the Court of Civil Appeals of this state for the Fifth District, and writ of error was denied by our Supreme Court. See 101 Tex. 665. The point was squarely raised before the Court of Civil Appeals in the cited case, and it was necessary for the court to dispose of it in reaching its conclusions, and the denial of the writ

of error by the Supreme Court was an affirmance in legal effect of the judgment of the appellate court on the point. It follows that it is our opinion that the corporation's act in pledging as collateral security the shares of stock in question was not inhibited by either section 6, article 12, of our Constitution, or by article 1146 of our statute.

[6] Was the action of the corporation in so pledging the stock ultra vires, in the sense that such act was prohibited by its charter? We dispose of this contention by saying that there was no plea of ultra vires in this case, but only a general demurrer and general denial, as we have stated, and there was nothing in the evidence to show that the corporation's charter prohibited this transaction.

[7, 8] There is nothing in the contention of appellant that the evidence failed to show that the Central Lumber Company's board of directors had authorized the pledging of this stock. The certificate was signed, and purported to be issued by, the corporation's president, Mr. B. F. Greenwood, whose act was attested by the secretary under the seal of the corporation. There being no plea of ultra vires, and no proof in support of such plea of lack of authority to issue this certificate, it will be presumed in favor of a stranger, as was the appellee, in dealing with the corporation, that the president was fully authorized to issue this stock. And if there had been a plea of ultra vires because the act was prohibited by some charter provision, it could not have availed in this case, because the undisputed proof shows that the corporation took and kept appellee's property —in other words, that the contract was fully executed on appellee's part, and the corporation got the benefit of it, and, therefore, it could not interpose successfully a plea of ultra vires, and thereby defeat its just obligation, but should be estopped to do so.

All assignments are overruled, and the judgment is affirmed.